UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CARLOS RIJOS | CIVIL ACTION |
| VERSUS | NO. 24-2214 |
| SANARE ENERGY PARTNERS, LLC, ET AL. | SECTION "O" |

### ORDER AND REASONS

Before the Court in this admiralty case is Plaintiff Carlos Rijos's motion[1] to remand. Rijos was a passenger in a fishing boat that allided with an oil-and-gas platform owned by Defendant Sanare Energy Partners, LLC and affixed to the outer Continental Shelf ("OCS"). Rijos sued Sanare and others for negligence in state court. Sanare in turn removed the case based on the "straightforward and broad," *In re Deepwater Horizon*, 745 F.3d 157, 163 (5th Cir. 2014), jurisdictional grant of the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. § 1349(b)(1). Rijos now moves to remand, contending the Court lacks OCSLA jurisdiction. But he is mistaken. OCSLA jurisdiction obtains where, as here, the dispute arises from an allision with an on-OCS platform that is or was involved in the exploration, development, or production of OCS minerals. *See Tenn. Gas Pipeline v. Hous. Cas. Ins. Co.*, 87 F.3d 150, 154–55 (5th Cir. 1996). Because *Tennessee Gas Pipeline* compels the conclusion that this case arises out of or in connection with "any" OCS "operation," Section 1349(b)(1)'s "undeniably broad" terms supply subject-matter jurisdiction. *EP Operating Ltd. P'ship v. Placid Oil Co.*, 26 F.3d 563, 569 (5th Cir. 1994). Accordingly, for these reasons and those that follow, the motion is **DENIED**.

---

[1] ECF No. 9.

## I. BACKGROUND

This admiralty case arises from an allision between a sport-fishing vessel in which Carlos Rijos was riding as a passenger and an oil-and-gas platform in the Gulf of Mexico owned by Sanare and permanently affixed to the OCS.[2]

The facts material to Rijos's motion to remand are straightforward and few. Rijos was a passenger aboard a sport-fishing vessel owned by Linedout Pro Fishing, LLC and operated by Gerald Mitchell Mosely.[3] Early one morning, the vessel left a marina in Cocodrie, Louisiana to participate in a fishing tournament off the coast of Louisiana.[4] Later that same morning, the vessel allided with an unmarked, unlit platform in the Gulf of Mexico.[5] The platform was owned by Sanare, an oil-and-gas exploration and production company,[6] and permanently affixed to the OCS.[7]

Claiming "serious injuries," Rijos brought an admiralty-and-maritime claim against Sanare, Linedout Pro Fishing, and Mosely in Louisiana state court.[8] He alleges that Sanare was negligent or negligent *per se* in these ways (among others)—

- "Creat[ing] . . . an unreasonably dangerous condition on the platform in question;"[9]

---

[2] *See generally* ECF No. 3-2.
[3] *Id.* at ¶¶ VIII–IX. The other passenger in the sport-fishing vessel that morning, Claude Royster, allegedly ejected from the vessel and died as a result of the allision. *See* Complaint at ¶ 8, *Royster v. Sanare Energy Partners, Inc.*, No. 24-CV-1627 (E.D. La. June 26, 2024), ECF No. 1. Royster's widow brought a separate wrongful-death suit in this Court against Sanare, Linedout Pro Fishing, and Mosely, invoking OCSLA jurisdiction over her cause of action against Sanare. *See id.* at ¶ 12. A third case arising from the same allision was recently removed to this Court. *See* Notice of Removal, *Royster v. Sanare Energy Partners, LLC*, No. 25-CV-968 (E.D. La. May 14, 2025), ECF No. 1.
[4] ECF No. 3-2 at ¶ IX.
[5] *Id.* at ¶ X.
[6] *Id.* at ¶¶ III & X.
[7] ECF No. 3-3 at ¶ 5.
[8] ECF No. 3-2 at ¶ X.
[9] *Id.* at ¶ XI(h).

2

- "Failing to properly light the platform as required by law;"[10]

- "Failing to have the sufficient number and type of aids to navigation on the platform;"[11]

- "Failing to equip the platform with proper fog horns;"[12]

- "Failing to mark the platform on the relevant [National Oceanic and Atmospheric Administration] paper or electronic charts;"[13]

- "Failing to comply with its obligations to maintain, inspect and ensure working aids to navigation" under federal regulations;[14]

- "Failing to comply with permits issued by the Army Corps of Engineers;"[15]

- "Failing to eliminate the known unreasonably dangerous condition(s) on the platform in question;"[16] and

- "Violat[ing] numerous industry standards, federal statutes and/or regulations including but not limited to failing to properly mark its platform on the relevant navigational charts and failure to equip the platform with the proper and required Aids to Navigation as required by" federal regulations.[17]

Rijos also invoked the Saving to Suitors Clause of the jurisdictional statute governing admiralty-and-maritime claims.[18] *See* 28 U.S.C. § 1333(1). Because Rijos invoked the Saving to Suitors Clause, this case may not be removed based on admiralty-and-maritime jurisdiction under 28 U.S.C. § 1333(1); it "may only be removed when original jurisdiction is based on another jurisdictional grant," like

---

[10] *Id.* at ¶ XI(i).
[11] *Id.* at ¶ XI(j).
[12] *Id.* at ¶ XI(k).
[13] *Id.* at ¶ XI(l).
[14] *Id.* at ¶ XI(m).
[15] *Id.* at ¶ XI(n).
[16] *Id.* at ¶ XI(o).
[17] *Id.* at ¶ XII.
[18] *Id.* at ¶ V.

OCSLA jurisdiction under Section 1349(b)(1). *Barker v. Hercules Offshore, Inc.*, 713 F.3d 208, 219 (5th Cir. 2013) (citing *In re Dutile*, 935 F.2d 61, 63 (5th Cir. 1991)).

Sanare timely removed the case to this Court, invoking original jurisdiction under only Section 1349(b)(1) of OCSLA.[19] *See* 43 U.S.C. § 1349(b)(1). The notice of removal asserts that the Court has OCSLA jurisdiction under Section 1349(b)(1) because the case arises from Sanare's oil-and-gas drilling operations on the OCS.[20]

Rijos now moves to remand.[21] Sanare opposes.[22]

## II. ANALYSIS

Rijos moves the Court to remand this allision case to state court because he says the Court lacks OCSLA jurisdiction. Sanare rejoins that the Court has OCSLA jurisdiction because the case arises out of or in connection with any on-OCS oil-and-gas operation. *See* 43 U.S.C. § 1349(b)(1)(A). The Court agrees.

Sanare may remove a case from state court to this Court if this Court would have original jurisdiction. *See* 28 U.S.C. § 1441(a). As the removing party, Sanare "bears the burden of showing that federal jurisdiction exists and that removal was proper." *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002) (citations omitted). "The removal statute is strictly construed, with doubts 'resolved in favor of remand.'" *Pace v. Cirrus Design Corp.*, 93 F.4th 879, 888–89 (5th Cir. 2024) (quoting *Gutierrez v. Flores*, 543 F.3d 248, 251 (5th Cir. 2008)).

---

[19] ECF No. 3.
[20] *Id.* at ¶ 16.
[21] ECF No. 9.
[22] ECF No. 10.

The basis for original jurisdiction is Section 1349(b)(1) of OCSLA. *See* 43 U.S.C. § 1349(b)(1). Congress passed OCSLA "to establish federal ownership and control over the mineral wealth of the OCS and to provide for the development of those natural resources." *EP Operating*, 26 F.3d at 566 (citation omitted). "Congress intended for the judicial power of the United States to be extended to the entire range of legal disputes that it knew would arise relating to resource development on the [OCS].'" *Id.* at 569 (quotation omitted). Consistent with congressional intent, OCSLA has a "broadly worded grant of original jurisdiction," *id.* at 567, in Section 1349(b)(1):

> [T]he district courts of the United States shall have jurisdiction of cases and controversies arising out of, or in connection with . . . any operation conducted on the [OCS] which involves exploration, development, or production of the minerals, of the subsoil and seabed of the [OCS], or which involves rights to such minerals . . . .

43 U.S.C. § 1349(b)(1)(A).

Section 1349(b)(1) uses "undeniably broad" terms. *EP Operating*, 26 F.3d at 569.[23] One of them, "operation," is not defined in OCSLA, but the Fifth Circuit has interpreted it broadly to include both "the doing of some physical act on the OCS" and "the cessation of physical acts" on the OCS. *Id.* at 567. (citation omitted). Under

---

[23] The Fifth Circuit has underscored the breadth of OCSLA's jurisdictional grant under Section 1349(b)(1) again-and-again in published opinions that span almost three decades. *See, e.g.*, *In re Deepwater Horizon*, 745 F.3d at 163 (describing OCSLA's jurisdictional grant as "straightforward and broad" (citation omitted)); *Petrobras Am., Inc. v. Vicinay Cadenas, S.A.*, 815 F.3d 211, 215 (5th Cir. 2016) (OCSLA's jurisdictional grant "is straightforward and broad." (quotation and citation omitted)); *Barker*, 713 F.3d at 213 ("The jurisdictional grant in OCSLA is broad, covering a wide range of activity occurring beyond the territorial waters of the states." (quotation omitted)); *Total E & P USA Inc. v. Kerr-McGee Oil & Gas Corp.*, 719 F.3d 424, n.5 (5th Cir. 2013) (Section 1349(b)(1) is a "broad jurisdictional grant . . . ." (citations omitted)); *Tenn. Gas Pipeline*, 87 F.3d at 154 (OCSLA's jurisdictional grant "is very broad."); *EP Operating*, 26 F.3d at 569 ("[A] broad reading of the jurisdictional grant of [OCSLA] is supported by the expansive substantive reach of the OCSLA."); *Recar v. CNG Producing Co.*, 853 F.2d 367, 369 (5th Cir. 1988) ("The reach of OCSLA is broad . . . .").

the Fifth Circuit's "broad view of the term," an "operation" does not require "current activity on the facilities erected on the OCS." *Id.* at 568. It is enough to qualify as an "operation" if "offshore facilities were erected on the OCS, they were used to transport minerals in the past, they may be used to transport minerals in the future, and they will eventually have to be removed pursuant to federal regulations." *Id.*

The terms "exploration," "development," and "production" in Section 1349(b)(1) are "defined broadly in the statutes to encompass the full range of oil and gas activity[,] from locating mineral resources through the construction, operation, servicing[,] and maintenance of facilities to produce those resources." *Id.* at 568 (footnote omitted); *see also* 43 U.S.C. § 1331(k) (defining "exploration"); 43 U.S.C. § 1331(l) (defining "development"); 43 U.S.C. § 1331(m) (defining "production").

The phrase "arising out of, or in connection with" in Section 1349(b)(1) is "undeniably broad in scope." *EP Operating*, 26 F.3d at 569. Because "arising out of" and "in connection with" are not defined in OCSLA, the Court gives those terms their ordinary meaning. *See Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 566 (2012) ("When a term goes undefined in a statute, we give the term its ordinary meaning."). "Arising out of" ordinarily means "originating from, having its origin in, growing out of or flowing from, or in short, incident to, or having connection with." *Hamilton v. United Healthcare of La., Inc.*, 310 F.3d 385, 391 (5th Cir. 2002) (brackets, quotation, and citation omitted). And "connection" ordinarily means a "relationship or association in thought (as of cause and effect, logical sequence, mutual dependence or involvement)[;]" "[t]he condition of being related to something else by a bond of

6

interdependence, causality, logical sequence, coherence, or the like[;]" or a "relation between things one of which is bound up with, or involved in, another." *United States v. Am. Com. Lines, L.L.C.*, 875 F.3d 170, 175 (5th Cir. 2017) (citations omitted).

The Fifth Circuit has found Section 1349(b)(1)'s "arising out of, or in connection with" test met in a "broad range of legal disputes." *EP Operating*, 26 F.3d at 569. In *EP Operating*, for example, a panel reversed a district court's Rule 12(b)(1) dismissal of a partition suit to determine ownership rights to on-OCS property and held that OCSLA jurisdiction obtained over the suit. *Id.* at 570. Although there was "no current production from the offshore facilities involved," *id.* at 568, and the partition suit did not "involve actions on the OCS," *id.* at 569, the panel still held that the suit was "sufficiently connected with the operation of those offshore facilities to come within the broad phrase 'arising out of, or in connection with.'" *Id.* (quoting 43 U.S.C. § 1349(b)(1)(A)). The panel reasoned that Section 1349(b)(1)'s test was met because resolving the ownership rights would facilitate the reuse, sale, or salvage of offshore facilities, which would in turn "affect the efficient exploitation of resources from the OCS and/or threaten the total recovery of federally-owned resources." *Id.* at 570.

The Fifth Circuit has found Section 1349(b)(1)'s test met in other cases "one step removed from the actual transfer of minerals to the shore." *United Offshore Co. v. S. Deepwater Pipeline Co.*, 899 F.2d 405, 406–07 (5th Cir. 1990). For example, one panel called it "clear" that OCSLA jurisdiction obtained over "a contractual dispute over the control of an entity which operates a gas pipeline." *Id.* at 407. Another panel held that a contract dispute involving the building of a platform on the OCS was

7

"squarely encompass[ed]" by Section 1349(b)(1)'s broad language. *Laredo Offshore Constructors, Inc. v. Hunt Oil Co.*, 754 F.2d 1223, 1227 (5th Cir. 1985). And a third panel more recently held that a suit to recover penalties under a Louisiana wildlife statute satisfied Section 1349(b)(1)'s "arising out of, or in connection with" test because "the oil and other contaminants would not have entered into the State of Louisiana's territorial waters but for [the] drilling and exploration operation on the OCS." *Deepwater Horizon*, 745 F.3d at 163–64 (quotation omitted). In so holding, the *Deepwater Horizon* panel emphasized that Section 1349(b) requires "only a 'but-for' connection" between the lawsuit and the OCS operation. *Id.* at 163 (collecting cases).

Most relevant to this allision case, the Fifth Circuit had "no difficulty" holding that Section 1349(b)(1)'s test was met in a suit arising from a tug's allision with an oil-and-gas platform affixed to the OCS. *See Tenn. Gas Pipeline*, 87 F.3d at 154. Applying the same but-for test described in *Deepwater Horizon*, *Tennessee Gas Pipeline* held that OCSLA jurisdiction obtained because "there would not have been an accident had [the platform owner] not built its platform to extract minerals from the OCS." *Id.* at 155. Importantly, the panel upheld OCSLA jurisdiction even though "the dispute 'arose out of' a navigational error, and not an operation on the OCS." *Id.* And the panel rejected as "meritless" the contention that there was no OCSLA jurisdiction because "the platform itself did nothing to cause the accident, so that the controversy is not connected with any physical act constituting an operation." *Id.*

Applying those precedents here, the Court has "no difficulty" holding that this case comes within Section 1349(b)(1)'s "very broad" jurisdictional grant. *Id.* at 154,

8

155. As noted, this case arises from an allision between a recreational-fishing vessel and an oil-and-gas platform owned by Sanare, permanently affixed to the OCS, and engaged at some point in oil-and-gas drilling operations under an OCS lease.[24] *Tennessee Gas Pipeline* controls. The but-for test is met here for essentially the same reasons it was met there: This case and that one feature an allision with an oil-and-gas platform affixed to the OCS. *See id.* at 154–155. Here, like there, the allision would not have occurred but for the existence of an on-OCS oil-and-gas platform that is, or at the very least was at one point, engaged in on-OCS extractive activities. *See id.* at 155. It is therefore immaterial that Rijos characterizes his injuries as arising from a "hazard to navigation" or from "recreational fishing activities" rather than from an "operation" on the OCS.[25] *See id.* (rejecting similar efforts to avoid OCSLA jurisdiction by creatively recharacterizing what an allision "arose out of"). "The undeniable fact is" that the allision between the recreational-fishing vessel and Sanare's on-OCS oil-and-gas platform would not have occurred had Sanare's platform not been built "to extract minerals from the OCS." *Id.*

In sum, because the Fifth Circuit "deems [Section] 1349 to require only a but-for connection," *In re Deepwater Horizon*, 745 F.3d at 163 (quotation omitted), and because the allision at the core of this case would not have occurred but for the

---

[24] *See* ECF No. 3-2 at ¶ X (petition alleging injuries arising from the allision); ECF No. 3-3 at ¶ 4–5 (declaration attesting that the platform "is permanently affixed to the OCS"); ECF No. 10 at 2 (assertion that the platform "is engaged in oil and gas drilling operations on the OCS"). For his part, Rijos does not dispute Sanare's assertions that (1) Sanare owned the platform; (2) the platform was permanently affixed to the OCS; and (3) the platform was engaged in oil-and-gas drilling operations on the OCS under an OCS lease. *See generally* ECF No. 9; ECF No. 11. So Rijos has forfeited any challenge to those assertions for purposes of his motion to remand, and the Court "accept[s] [them] as true" in its Section 1349(b)(1) analysis. *EP Operating*, 26 F.3d at 570.

[25] ECF No. 11 at 2.

9

existence of Sanare's on-OCS oil-and-gas platform, *Tennessee Gas Pipeline* compels the Court to conclude that this case "aris[es] out of, or in connection with . . . any operation conducted on the [OCS] which involves exploration, development, or production of" OCS minerals. 43 U.S.C. § 1349(b)(1)(A). The Court has jurisdiction.[26]

Rijos's counterarguments fail. First, he submits that Section 1349(b)(1) is not satisfied because he "was injured on a recreational vessel in navigation by a hazard to navigation,"[27] and not by an on-OCS operation. The argument is untethered to the statutory text and foreclosed by Fifth Circuit precedent. As for the text, the language of Section 1349(b)(1) does not require that an on-OCS operation cause the injury sparking the suit; it merely requires the broader "case[ ] and controvers[y]" to "aris[e] out of, or in connection with" "any" on-OCS "operation" that "involves exploration, development, or production of" OCS minerals. *See* 43 U.S.C. § 1349(b)(1)(A); *accord, e.g.*, *EPL Oil & Gas, LLC v. Trimont Energy (NOW), LLC*, 640 F. Supp. 3d 687, 693 (E.D. Tex. 2022) (explaining that OCSLA jurisdiction does not require the injury-causing act itself to constitute an on-OCS operation). As for precedent, the Fifth Circuit has disclaimed "a situs requirement for OCSLA jurisdiction," which is what Rijos's argument would require the Court to impose. *In re Deepwater Horizon*, 745 F.3d at 164. And in all events, the Fifth Circuit has routinely upheld OCSLA jurisdiction in cases that do not involve an injury caused by an on-OCS operation.

---

[26] Rijos does not specifically dispute that an "operation" exists within the meaning of OCSLA. *See* 43 U.S.C. § 1349(b)(1)(A). Nor could he. Because Sanare's oil-and-gas drilling platform is permanently affixed to the OCS, was used to transport minerals on the OCS, and "will eventually have to be removed pursuant to federal regulations," *EP Operating*, 26 F.3d at 567, an "operation" exists.

[27] ECF No. 9-1 at 4.

10

*See, e.g., Amoco Prod. Co. v. Sea Robin Pipeline Co.*, 844 F.2d 1202, 1204 (5th Cir. 1988) (contract dispute involving no on-OCS injury-causing act); *United Offshore*, 899 F.2d at 407 (same); *EP Operating*, 26 F.3d at 569–70 (partition dispute involving no on-OCS injury-causing act). Were Rijos right, all of those cases would be wrong.[28]

Next, Rijos contends that OCSLA jurisdiction should not obtain because he and others on the boat were mere "recreational fishermen" without "any relationship whatsoever" to on-OCS operations.[29] He reasons that OCSLA jurisdiction "does not fit" because he is "not an oilfield worker injured during the course and scope of his employment" or "a platform owner or oil company whose oil and gas related business was impacted" by the allision.[30] But nothing in the text of Section 1349(b)(1) conditions OCSLA jurisdiction on the nature of the vessel involved, the identity or status of the plaintiff, the sector of the plaintiff's employment, or even the "relationship" between the plaintiff and the on-OCS operation.[31] *See* 43 U.S.C.

---

[28] *Deepwater Horizon* notes in passing that courts "*typically* assess jurisdiction . . . in terms of . . . whether the activities that cause the injury constituted an 'operation.'" 745 F.3d at 163 (emphasis added). But *Deepwater Horizon* did not purport to overrule or undermine decades of Fifth Circuit precedent upholding OCSLA jurisdiction despite the absence of any injury-causing activity on the OCS. *See, e.g., Amoco Prod. Co.*, 844 F.2d at 1204; *United Offshore*, 899 F.2d at 407; *EP Operating*, 26 F.3d at 569–70; *cf. EPL Oil & Gas, LLC*, 640 F. Supp. 3d at 693–94 (rejecting argument that *Deepwater Horizon*'s statement about how courts "typically assess jurisdiction" means that the injury-causing act must itself be an OCS operation (quotation omitted)). Just the opposite: *Deepwater Horizon* approvingly cites *Tennesee Gas Pipeline* and emphasizes that a but-for connection is all that is needed to support OCSLA jurisdiction. *See* 745 F.3d at 157 (citing *Tenn. Gas Pipeline*, 87 F.3d at 155).

[29] *Id.* at 5.

[30] *Id.* at 4, 7.

[31] Nor does OCSLA jurisdiction require the act giving rise to the lawsuit to have directly affected OCS production. A change in production is merely "[i]nstructive as to what types of cases" come within Section 1349(b)(1)'s broad terms. *EP Operating*, 26 F.3d at 569–70. Nothing in the text of Section 1349(b)(1) requires the lawsuit to affect production. *See* 43 U.S.C. § 1349(b)(1)(A); *see also, e.g., Total E&P USA, Inc. v. Marubeni Oil & Gas (USA)*, 824 F. App'x 197, 203 (5th Cir. 2020) (per curiam) (upholding OCSLA jurisdiction in contract dispute concerning the cost of abandoning oil-and-gas assets even though the acts underlying the suit did not cause a change in OCS production).

11

§ 1349(b)(1); *see also Reed v. Taylor*, 923 F.3d 411, 415 (5th Cir. 2019) ("Text is the alpha and the omega of the interpretive process." (quotation omitted)). The statutory text instead supplies a "straightforward and broad," *In re Deepwater Horizon*, 745 F.3d at 163 (citation omitted), grant of jurisdiction over all "cases and controversies arising out of, or in connection with . . . any operation conducted on the [OCS] which involves exploration, development, or production of" OCS minerals. *Id.* Had Congress intended to limit OCSLA jurisdiction in the way Rijos wants, "it could easily have done so." *Sebelius v. Cloer*, 569 U.S. 369, 376 (2013).[32]. The Court "take[s] Congress at its word, presume[s] it meant what it said, and refuse[s] to revise [OCSLA] under the guise of interpreting [it]." *Reed*, 923 F.3d at 415 (citation omitted).

Rijos next stresses that his claims "sound in admiralty and only admiralty."[33] That is perhaps true—but immaterial. The jurisdictional and choice-of-law questions are "entirely independent." *Barker*, 713 F.3d at 219 (quotation omitted). That Rijos's claims are "governed by the substantive principles of" admiralty "has nothing to do with" OCSLA jurisdiction. *Id.* (quotation omitted). The application of admiralty-and-maritime law "does not displace" OCSLA jurisdiction; the Court "retain[s] [its] original federal question jurisdiction under OCSLA even when maritime law eventually provides the substantive rule of decision." *Id.* (citation omitted).

---

[32] For similar reasons, Rijos's footnoted attempt to distinguish *Tennesee Gas Pipeline* fails. *See* ECF No. 11 at 4 n.3. Rijos essentially argues that *Tennesee Gas Pipeline* should not control because it involved a different type of plaintiff (a platform owner rather than a recreational fisherman) and a different type of injury (damage to a platform rather than personal injuries). *See id.* Neither distinction makes any difference to the Section 1349(b)(1) analysis or the but-for test here. OCLSA jurisdiction obtained in *Tennesee Gas Pipeline* because the allision there would not have occurred had the platform not been built to extract minerals from the OCS. *See* 87 F.3d at 155. The same is true here. But for the existence of Sanare's on-OCS oil-and-gas drilling platform, the allision would not have occurred.

[33] ECF No. 9-1 at 5.

12

Rijos also argues that "his legal rights arising from his purely maritime accident should not be limited or otherwise thwarted" by the exercise of OCSLA jurisdiction.[34] But Rijos does not clearly identify those "legal rights" or explain how he thinks they would be "limited or otherwise thwarted" if the Court correctly exercises original jurisdiction under Section 1349(b)(1).[35] If Rijos intends to argue that the proper exercise of OCSLA jurisdiction "limit[s] or otherwise thwart[s]" his right to a state-court forum under the Saving to Suitors Clause, he would be mistaken. The Saving to Suitors Clause "does not guarantee plaintiffs a nonfederal forum, or limit the right of defendants to remove such actions to federal court where there exists some basis for federal jurisdiction other than admiralty." *Barker*, 713 F.3d at 220 (quotation and alterations omitted). Because the Court has held that "there is an independent basis for federal jurisdiction" under OCSLA, "removal of [Rijos's] maritime case[ ] is permissible"; it neither "limit[s]"[36] nor "thwart[s]"[37] any of Rijos's rights under the Saving to Suitors Clause. *Id.* (citation omitted).

Rijos also protests that removal jurisdiction under OCSLA "should not be based on Sanare's self-serving response" to his allegations.[38] But the upshot of Rijos's argument is that a plaintiff must invoke OCSLA in the petition or complaint to support original jurisdiction under that statute—a proposition the Fifth Circuit repeatedly has rejected. *See, e.g.*, *In re Deepwater Horizon*, 745 F.3d at 163

---

[34] *Id.*
[35] *Id.*
[36] *Id.*
[37] *Id.*
[38] ECF No. 11 at 6.

13

("[B]ecause jurisdiction is invested in the district courts by [OCSLA], a plaintiff does not need to expressly invoke OCSLA in order for it to apply." (quotation omitted)); *Barker*, 713 F.3d at 213 ("A plaintiff does not need to expressly invoke OCSLA in order for it to apply." (citation omitted)); *Amoco Prod. Co.*, 844 F.3d at 1205 ("In determining federal court jurisdiction, we need not traverse the Serbonian Bog of the well pleaded complaint rule because § 23 of OCSLA expressly invests jurisdiction in the United States District Courts." (citation omitted)). For essentially the same reasons, Rijos's reliance[39] on well-pleaded-complaint-rule cases is misplaced: Section 1349(b)(1) is an express grant of original jurisdiction; it is not a federal defense subject to the well-pleaded-complaint rule. *See Amoco Prod. Co.*, 844 F.3d at 1205.

Turning from the case law to consequentialism, Rijos next contends that exercising OCSLA jurisdiction here would "lead to an absurd result" because it would give defendants "carte blanche to remove any case . . . by simply contending that OCSLA applied."[40] Rijos is wrong. Nothing in this order and reasons nor in Fifth Circuit precedent permits a removing defendant to secure OCSLA jurisdiction "by simply contending that OCSLA applie[s]."[41] The removing defendant must instead establish that the case comes within Section 1349(b)(1)'s "straightforward and broad" language by showing that the Fifth Circuit's but-for test is met. *In re Deepwater Horizon*, 745 F.3d at 162, 163 (citations omitted). Sanare has done so here.

---

[39] ECF No. 9-1 at 8 (citing *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 808 (1986); and then citing *Hoskins v. Bekins Van Lines*, 343 F.3d 769, 772 (5th Cir. 2003)).
[40] *Id.*
[41] *Id.*

14

Finally, Rijos falls back on the proposition that any ambiguities about removal jurisdiction must be construed against removal. *See Manguno*, 276 F.3d at 723 (citation omitted). That is equal parts undisputed and unhelpful. There are no ambiguities about OCSLA jurisdiction here: *Tennessee Gas Pipeline* controls this case and compels the conclusion that the but-for test is met. *See* 87 F.3d at 154–55.

* * *

Sanare has carried its burden to show that the Court has removal jurisdiction under Section 1349(b)(1) of OCSLA. Applying *Tennesee Gas Pipeline* and the Fifth Circuit's but-for test, the Court holds that this case "aris[es] out of, or in connection with . . . any operation conducted on the" OCS that "involves exploration, development, or production of" OCS minerals because the allision at the core of this case would not have occurred but for the construction of Sanare's on-OCS oil-and-gas platform that is, or at one point was, engaged in drilling operations on the OCS. 43 U.S.C. § 1349(b)(1)(A).

### III. CONCLUSION

Accordingly,

**IT IS ORDERED** that Rijos's motion[42] to remand is **DENIED**.

New Orleans, Louisiana, this 18th day of June, 2025.

BRANDON S. LONG<br>UNITED STATES DISTRICT JUDGE

---

[42] ECF No. 9.